David **ROSEN** and Florence **Rosen**, Co-Administrators of the Estate of Barry J. Rosen, deceased, Plaintiffs,

v.

**SAVANT INSTRUMENTS, INC.,**
**Defendant.**

**No. 66–C–847.**

United States District Court
E. D. New York.

Feb. 23, 1967.

Emile Z. Berman, and A. Harold Frost, New York City, for plaintiffs.

Schaffner & Lawless, Brooklyn, N. Y., for defendant; Joseph B. Corpina, New York City, of counsel.

ZAVATT, Chief Judge.

The defendant has moved, pursuant to 28 U.S.C. § 1404(a),[1] for an order transferring this civil action for wrongful death to the United States District Court for the District of Rhode Island. The motion is granted.

1. § 1404. Change of venue
 (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The plaintiffs are the coadministrators of the estate of their deceased son, Barry J. Rosen. They were citizens of the State of Maryland prior to, on the date when and ever since the filing of the complaint in this court on August 30, 1966. The defendant is a New York corporation with its principal place of business in the State of New York. The alleged wrongful death occurred on July 18, 1965, at Brown University, Providence, Rhode Island, while the decedent was a student at Brown University. On that date he was electrocuted while using certain high voltage electrophoresis equipment, which the defendant had sold to Brown University.

The plaintiffs are suing the defendant in this court under the wrongful death statute of the State of Rhode Island. This action may be transferred only if it could have been brought in the District Court of Rhode Island, when the action was instituted here, and only if the transferor court determines that such a transfer is in the interest of justice or for the convenience of parties and witnesses. It has been settled in this Circuit since Foster-Milburn Co. v. Knight, 181 F.2d 949 (2d Cir. 1950), that the words "where it might have been brought", in 28 U.S.C. § 1404(a), limit the transferee forum to one where the defendant would have been amenable to process and venue would have been proper. The fact that the defendant moves to transfer does not waive any valid objection either to the jurisdiction of the proposed transferee court or the propriety of venue there. This is so even though the defendant is willing to consent that the proposed transferee court has jurisdiction and that venue there is proper. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). The plaintiffs concede that this court would not be abusing its discretion under 28 U.S.C. § 1404(a) by transferring this case to the district of Rhode Island *if* this court has authority to so transfer. The plaintiffs do contend, however, that this action could not have been instituted in the district of Rhode Island. The at-torneys for the respective parties, in their memoranda of law, deal only with the question of jurisdiction. They do not consider the question of venue. 28 U.S.C. § 1391.

The defendant has never been qualified to do business in the State of Rhode Island, was not so qualified and was not doing business in the State of Rhode Island when this action was commenced. The moving papers reveal only one transaction by the defendant in the State of Rhode Island, to wit in 1961. In that year its predecessor in interest, Servonuclear Corporation, sold certain high voltage equipment to Brown University. This transaction followed a business trip to Providence, Rhode Island, made by Alex Meshbane, president of the defendant's predecessor, for the purpose of selling equipment manufactured by it. He personally met with Dr. Frank Rothman, the professor in charge of the biological research laboratory at Brown University and he contends that this was one of the elements leading to the sale, even though a contract of sale was not entered into at that time. The moving papers do not indicate whether a contract to sell was made in Rhode Island or in New York or how or by whom the equipment was shipped to Brown University. Nor does it appear clearly from the moving papers whether the sale of this equipment was made by Servonuclear Corporation or by the defendant. The defendant's moving papers allege, however, that the equipment so sold was installed by agents or employees of Brown University and was under the direct supervision, maintenance and control of Brown University from the time the equipment was delivered to the date of the alleged occurrence. It would also appear that this is the only sale that the defendant corporation or its predecessor ever made to one in the State of Rhode Island; that the defendant has never maintained an office or hired salesmen or agents or conducted any advertising or had any telephone listing in the State of Rhode Island.

The first issue to be resolved is whether this one transaction by the de-

fendant or its predecessor in 1961 gave the State of Rhode Island power to exercise in personam jurisdiction over the defendant, had the plaintiffs chosen to initiate this suit in Rhode Island and, therefore, whether this suit could have been instituted in the District Court for the District of Rhode Island. For, in diversity actions (such as this) the amenability of a foreign corporation to sue is determined by state law. Cook v. Bostitch, Inc., 328 F.2d 1 (2d Cir. 1964); Arrowsmith v. United Press Int'l, 320 F.2d 219, 6 A.L.R.3d 1072 (2d Cir. 1963). The "long arm" statute of Rhode Island, 2 Gen.Laws of Rhode Island, 1956, section 9-5-33, provides in pertinent part as follows:

"[E]very foreign corporation * * * that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations * * * amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States."

This statute was considered by the United States District Court for the District of Rhode Island in Del Sesto v. Trans World Airlines, Inc., 201 F.Supp. 879 (Dist. R.I.1962). Although that case involved "substantial solicitation and transaction of business in Rhode Island by the defendant through its agents and employees" and, therefore, is not determinative as to whether the defendant in the instant case has satisfied the minimum contacts required under that Rhode Island statute, it is of interest to note that the District Court of Rhode Island had this to say about the Rhode Island "long arm" statute:

"From the plain language of this statute it will be seen that the legislature of Rhode Island has chosen to exercise jurisdiction over foreign corporations up to the constitutional limitation."

██ The minimum contact theory stated in Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945):

"[R]equires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158.

The criteria by which the forum state may judge the sufficiency of a foreign defendant's activities in order to exercise personal jurisdiction is not "simply mechanical or quantitative." The activities of such a foreign corporation are measured by their "quality and nature." 326 U.S. at 319, 66 S.Ct. at 160. The court is aware of McGee v. Int'l Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) as well as the more recent case of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *Hanson* warned that cases like *McGee* should not be regarded as enabling a state to exercise in personam jurisdiction on any basis at all. It admonished that state lines must still be watched for jurisdictional purposes. Although the Supreme Court in *Hanson* adhered to the flexible standard of *International Shoe,* it said that:

"[I]t is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." 357 U.S. at 251, 78 S.Ct. at 1238.

██ In the instant case, the moving party has demonstrated that the defendant had "contact" with the State of Rhode Island. Although its contacts were min-

imal, this court believes that they do satisfy the constitutional requirements of *International Shoe,* supra, and the "long arm" statute of the State of Rhode Island, which was enacted for the purpose of permitting the State of Rhode Island to exercise jurisdiction over foreign corporations up to the constitutional limitation. The defendant's contacts with the State of Rhode Island were such that the maintenance of a suit there by these plaintiffs against the defendant would not offend traditional notions of fair play and substantial justice. Nor can it be said that the limits of *Hanson,* supra, would be exceeded were a state court of the State of Rhode Island to exercise jurisdiction over this defendant under its long arm statute, for this defendant did "purposefully [avail] itself of the privilege of conducting activities within the forum State * * *" by soliciting business there and shipping goods sold into that state. Independent research has failed to reveal any case in Rhode Island with facts similar to those of the instant case. We can only speculate as to what a Rhode Island state court would do in a case such as this. New York State, under its long arm statute, N.Y.C.P.L.R. § 302, has not chosen to extend its jurisdiction to the utmost constitutional limit, Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). Yet it has been held in Singer v. Walker, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), cert. denied, Estwing Mfg. Co. v. Singer, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158, that the solicitation of business in New York, by means of advertisements and other promotional material, when coupled with the shipment of goods into New York State, is sufficient to subject a nonresident, who has never been in New York State, to the jurisdiction of a New York state court, if the cause of action arises out of the goods so shipped. This court concludes that the courts of Rhode Island would hold that the defendant would have been subject to the jurisdiction of a Rhode Island court, had the plaintiffs brought this action in Rhode Island and that, therefore, the United States District Court for the District of Rhode Island, likewise, could have obtained jurisdiction. *Cook,* supra; *Arrowsmith,* supra.

 The next question for determination is whether venue could properly have been laid in the United States District Court for the District of Rhode Island. For, as noted in *Hoffman,* supra, this case may not be transferred from this district to the District of Rhode Island unless the latter court could have obtained jurisdiction and would have been the proper venue. Venue, being fixed by federal law, must be determined by federal law. Murphree v. Mississippi Publishing Corp., 149 F.2d 138 (5th Cir. 1945), aff'd, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946). Prior to the enactment of Pub.Law 89-714, 89th Cong., November 2, 1966, 80 Stat. 1111, 28 U.S.C. § 1391, provided in substance that a civil action, wherein jurisdiction is founded only on diversity of citizenship, might be brought only in the judicial district where all the plaintiffs or all the defendants reside. As to a corporation, its residence, for venue purposes, was stated to be the judicial district in which it is incorporated, or is licensed to do business or is doing business. 28 U.S.C. § 1391(a) (c). In 1963 subsection (f) was added by Pub.Law 88-234, 77 Stat. 473, as to a civil action on a tort claim arising out of the manufacture, assembly, repair, ownership, maintenance, use or operation of an automobile, so as to provide that such an action may be brought in the judicial district where the act or omission complained of occurred. This amendment was not broad enough to cover a claim such as that in the instant case, which arises out of an act or omission relating to a piece of equipment other than an automobile. Since, prior to the amendment of November 2, 1966, neither the plaintiffs nor the defendant resided in Rhode Island when this action was instituted and the defendant was not incorporated in the State of Rhode Island or licensed to do business there and was not doing business there, the District

of Rhode Island would not have been the proper venue. See Murphree v. Mississippi Publishing Corp., supra; Arrowsmith v. United Press Int'l, supra; Doyle v. Loring, 107 F.2d 337 (6th Cir. 1939), cert. denied, 309 U.S. 686, 60 S.Ct. 808, 84 L.Ed. 1029; Tiernan v. Westext Transport, Inc., 243 F.Supp. 566 (S.D.N.Y.1965); Hydrotherm, Inc. v. Bastian-Morley Co., Inc., 207 F.Supp. 744 (E.D.N.Y.1960). But 28 U.S.C. § 1391(a) has been amended so as to provide as follows:

"§ 1391. Venue generally

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, *or in which the claim arose.*" (Emphasis added.)

In view of this amendment and the facts in this case, it is clear that the alleged wrongful death occurred in the State of Rhode Island; that the claim arose in Rhode Island and, therefore, that venue would properly have been laid in the District Court for the District of Rhode Island. It is true that the complaint was filed here on August 30, 1966 and that 28 U.S.C. § 1391(a) was not amended until November 2, 1966. Section 1391(a) as so amended is procedural. It is the general rule that procedural statutes do apply to pending suits. McBurney v. Carson, 99 U.S. 567, 25 L.Ed. 378 (1879). The court holds, therefore, that under section 1391(a), as so amended, venue in the instant case would properly lie in the District Court for the District of Rhode Island as of the time the instant action was instituted in this court. Untersinger v. United States, 181 F.2d 953 (2d Cir. 1950); Orr v. United States, 174 F.2d 577 (2d Cir. 1949).

One can hardly argue that the transfer of this case to the District of Rhode Island would constitute an abuse of judicial discretion. The claim arose in Rhode Island. If it be true that Brown University installed the defendant's equipment and exercised complete operation, maintenance and control thereof from the date of the installation to the date of the decedent's death (as claimed by the defendant), then in the interests of justice this case should be tried in the jurisdiction where the defendant may bring in Brown University and assert any claim over against it that it desires to make. If this case were to remain here, there would most likely be a second case instituted in Rhode Island. If the defendant should prevail here, it is reasonable to expect that the plaintiffs would then sue Brown University in Rhode Island. If the plaintiffs prevail here, it is reasonable to expect that the defendant would institute an action against Brown University in Rhode Island. These may be some of the reasons why the plaintiffs have conceded that, should this court transfer this case to Rhode Island, it would not be abusing its discretion.

The defendant's motion to transfer this case to the United States District Court for the District of Rhode Island is granted. Settle an order on or before fifteen (15) days from the date hereof.