Military fay; claim for bach fay and restoration to fosition; resignation; refusal to fermit withdrawal; retroactivity of statute; National Guard technician. — On January 10, 1975 the court issued the following order:
Before cowen, Chief Judge, eashiwa and bennett, Judges.
“The petition in this case was filed by plaintiff, formerly a Technician in the Virginia Army National Guard, seeking to recover back pay and restoration to his former position in the Virginia Army National Guard. The case is before the court on the parties’ cross motions for summary judgment, and upon consideration thereof and after hearing oral argument, the court finds:
“(A) On January 28, 1972, plaintiff, who since 1968 had been employed as a Technician in the Virginia Army Na *824 tional Guard and held the military rank of Lieutenant Colonel in the Guard, submitted his written resignation from his civilian position for the stated reason of seeking employment closer to Bichmond, Virginia. Plaintiff had been asked to resign by the Director of Maintenance of the Virginia National Guard.
“(B) Before any formal administrative action was taken on plaintiff’s resignation, he sent a letter to the Director of Maintenance, dated February 21, 1972, asking that he be allowed to withdraw his resignation on the ground that it was rushed, secured by duress and coercion, and obtained contrary to the provisions of National Guard Begulation 690-2, paragraph 7-15, which provided as follows:
Designation. As a voluntary action, a resignation should not be demanded as an alternative to some other action to be taken or withheld. A technician may, however, elect to resign rather than submit to removal procedures. Under no circumstances will it be coerced. It is binding on the technician once submitted; however, at the discretion of the adjuta/nt generad, he may be permitted to withdrawi his resignation at cmy time prior to its effective date. * * * (Emphasis added.)
“In response to plaintiff’s request for withdrawal of the resignation, the Adjutant General of the Virginia National Guard had an investigation conducted, as a result of which it was fornid that plaintiff’s resignation had not been coerced. On April 24, 1972, the Adjutant General advised plaintiff by letter that his resignation had been accepted.
“(C) On May 9,1972, plaintiff sent the Adjutant General a letter under the heading ‘Submission of Grievance’ in which he claimed that his resignation was a product of duress and coercion and that he should be allowed to withdraw it. In his reply dated June 5, 1972, the Adjutant General informed plaintiff that careful attention had been given to plaintiff’s letter of May 9, but that the investigation had shown that the resignation was voluntary and had been submitted without coercion. The letter concluded that the Adjutant General declined to reconsider the case and stated that plaintiff’s resignation was therewith accepted effective 17 June 1972.
*825 “ (D) On May 25, 1972, the Department of the Army and the Air Force National Guard issued Technician Personnel Pamphlet 904, entitled ‘Supervisor’s Handbook,’ (hereinafter referred to as T.P.P. 904). Section X of T.P.P. 904 is entitled ‘Adverse Personnel Action Procedures,’ and paragraph 7-36 of section X provides as follows:
For the purpose of this section, resignation or optional retirement constitutes a removal where there is allegation that such actions were brought about by duress, intimidation or coercion.
In addition, paragraph 7-37, section X recited procedural steps which were required to be followed in adverse actions resulting in the removal of an employee, and paragraph 7-43 (b) established the right to a hearing. The Virginia Army National Guard did not receive a copy of T.P.P. 904 until July 7, 1972, and, therefore, neither plaintiff nor the officials of the Guard had actual knowledge of its contents until after June 17,1972.
“(E) On January 11,1973, plaintiff submitted to the Adjutant General a written request for reconsideration of the previous decision, which refused to accept the withdrawal of plaintiff’s resignation. The request for reconsideration was based on the provisions of T.P.P. 904. The Adjutant General replied by letter of February 14, 1973, stating that he would not reconsider the decision.
“(F) On June 14, 1973, plaintiff applied for and was given a release from his military position in the Virginia National Guard. Subsequently, plaintiff applied for and accepted a position as a Technician, GS-11, Step 9, with the District of Columbia National Guard, and was also given the military rank of Lieutenant Colonel in the District of Columbia National Guard.
“On the basis of the foregoing findings, the court makes the following conclusions of law:
“(1) Final administrative action on plaintiff’s request for withdrawal of his resignation was not taken until after T.P.P'. 904 was promulgated on May 25, 1972. While it is recognized that statutes are normally given prospective application only, it is the general rule that statutes relating to procedural rights apply to pending, as well as future litiga *826 tion, whether the action is pending before the courts, Rosen v. Savant Instruments, Inc., 264 F. Supp. 232, 237 (E.D.N.Y. 1967); Chovan v. E. I. Du Pont De Nemours & Co., 217 F. Supp. 808, 810 (E.D. Mich. 1963); cf. Dargel v. Henderson, 200 F. 2d 564, 566 (Emer. Ct. App. 1952), or still in the administrative process, United States v. Haughton, 413 F. 2d 736, 738 (9th Cir. 1969); Turner v. United States, 410 F. 2d 837, 842 (5th Cir. 1969). This rule is applicable to T.P.P. 904, because that regulation was promulgated before the effective date of plaintiff’s resignation and before completion of administrative action on his request for its withdrawal.
“(2) Although the Adjutant General did not have actual knowledge of the new regulations until after plaintiff’s resignation became effective, he had constructive knowledge of the regulations just as private parties are held to have constructive knowledge of regulations published in the Federal [Register. See Coat Corporation of America v. United States, 123 Ct. Cl. 176, 196, 105 F. Supp. 832, 834 (1952). Moreover, since the Adjutant General was given an opportunity to apply T.P.P. 904 when plaintiff brought it to his attention on January 11, 1973, and refused to do so, his ignorance of T.P.P. 904 at the time of its issuance is not a defense to this action.
“(3) The failure and refusal of the Adjutant General to process plaintiff’s request for the withdrawal of his resignation in accordance with the requirements of T.P.P. 904, constituted a denial of plaintiff’s procedural rights, voids the administrative action, and entitles plaintiff to recover the pay otherwise due him. Hanifan v. United States, 173 Ct. Cl. 1053, 1062-63, 354 F. 2d 358, 364 (1965) and cases cited therein.
“(4) In order to be employed as a technician of the Virginia Army National Guard, plaintiff is required by 32 U.S.C. V09(b) to hold a military position in the Virginia National Guard. The appointment of officers in the Virginia National Guard is reserved to the Governor of Virginia by Article 1, Section 8, Clause 16 of the United States Constitution and Section 44-27 of the Code of Virginia. Public Law 92-415, 86 Stat. 652, which authorizes this court to issue *827 orders to Government officials directing restoration of discharged employees to their former positions, does not empower the court to order the Governor of Virginia to reappoint plaintiff to a military position in the Virginia National Guard.
“it is therefore ordered that this case is hereby remanded to the trial division for determination of the amount of the recovery due plaintiff less any credits and offsets to which defendant is entitled, and
“it is further ordered that that part of plaintiff’s petition which seeks an order restoring him to his former position in the Virginia National Guard be and the same is denied.”
On February 28, 1975 the court denied plaintiff’s motion for rehearing and suggestion for rehearing en banc.
In accordance with the foregoing Order of the court and a memorandum report of the trial judge, on June 20, 1975 the court entered judgment in favor of plaintiff for $5,117.53, with $1,151.98 to be credited to plaintiff’s Civil Service Retirement and Disability Fund Account, $138.95 to be credited to plaintiff’s FEGLI Insurance Account, $186.95 to be credited to plaintiff’s NGAUS Insurance Account, and the balance of $3,639.65 to be paid to plaintiff.